UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THE RUBY SLIPPER CAFÉ, LLC

VERSUS

CHRISTOPHER BELOU and
CB HOSPITALITY, LLC

CIVIL ACTION

NO. 18-1548

SECTION M (3)

## ORDER & REASONS

Before the Court is a motion for summary judgment filed by defendants Christopher Belou ("Belou") and CB Hospitality, LLC ("CBH") (collectively "Defendants"),[1] to which plaintiff The Ruby Slipper Café, LLC ("Ruby Slipper") responds in opposition,[2] and in further support of which, or in opposition to, the parties filed numerous reply memoranda.[3] Also before the Court is Ruby Slipper's motion to dismiss Defendants' amended counterclaims,[4] to which Defendants respond in opposition,[5] and in further support of which Ruby Slipper replies.[6] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

## I.      BACKGROUND

This matter concerns the alleged theft of trade secrets and breaches of fiduciary duty and contract by a business's former employee. Ruby Slipper owns and operates a chain of restaurants called "Ruby Slipper Café."[7] In 2008, Jennifer and Erich Weishaupt opened the first Ruby Slipper Café on South Cortez Street in the Mid-City neighborhood of New Orleans, Louisiana. The restaurant, which serves southern breakfast with a New Orleans twist, along with

[1] R. Doc. 58.
[2] R. Doc. 77.
[3] R. Docs. 79, 83, 106, 115, 121 & 122.
[4] R. Doc. 91.
[5] R. Doc. 93.
[6] R. Doc. 98.
[7] R. Doc. 85 at 4.

brunch and lunch dishes, grew in popularity, and Ruby Slipper expanded to include other restaurant locations in Louisiana, Florida, and Alabama.[8]

In the autumn of 2008, Ruby Slipper hired Belou as a consultant and general manager in connection with the opening of the South Cortez Street location.[9] Then, in January 2009, Ruby Slipper hired Belou as the permanent, full-time restaurant manager at that location.[10] Belou left Ruby Slipper in September 2010 to pursue other opportunities, but returned to the company in January 2013.[11] Thereafter, Belou worked for Ruby Slipper in positions of increasing responsibility and, in 2015, he became the business development manager, which is part of the executive leadership team.[12] In that position, Belou developed knowledge and expertise in opening new restaurant locations and had access to Ruby Slipper's confidential business information, including business plans and strategies; the formula for opening new restaurants; kitchen configuration and other design and construction strategies; development and refinement of equipment and small wares packages; lists of business partners, preferred vendors, and purveyors; financial information; brand selection; and secret recipes.[13] Belou also participated in meetings with the executive leadership team in which they discussed business strategies, including the opening and closing of restaurants, in particular plans for the South Cortez Street location as Ruby Slipper prepared to open a new Mid-City location on South Broad Street.[14]

The building that housed Ruby Slipper's first location on South Cortez Street was owned by Sugarland Holdings, LLC (the "Landlord").[15] In October 2007, Ruby Slipper and the Landlord executed a commercial lease that ran from May 1, 2008, through April 30, 2018, and

---

[8] R. Doc. 85 at 4-5.
[9] *Id.* at 7.
[10] *Id.*
[11] *Id.*
[12] *Id.* at 8.
[13] *Id.*
[14] *Id.* at 9.
[15] *Id.* at 11.

consisted of an initial one-year term, plus three additional three-year terms at Ruby Slipper's option.[16]  Ruby Slipper exercised all of the three-year renewal options.[17]

In 2015, Ruby Slipper purchased a building on South Broad Street with the intent of relocating its Mid-City restaurant to that building after it was renovated.[18]  Belou was involved in the project, including designing the space and preparing to open the restaurant.[19]  The South Broad Street location had a "soft opening" in December 2017, and was fully open for business by mid-January 2018.[20]

In 2017, with the opening of the South Broad Street location and the end of the South Cortez Street lease approaching, Ruby Slipper's executive leadership team, including Belou, discussed how best to utilize the South Cortez Street location during the transition.[21]  In particular the team discussed whether to end the lease early or continue some sort of operation at the South Cortez Street location through the end of the lease in April 2018.[22]  Belou advocated for early termination of the lease.[23]

On November 14, 2017, the Landlord's attorney sent Ruby Slipper a letter offering an incentive for Ruby Slipper to terminate the lease early that consisted of two months off of the remaining four months of rent due.[24]  The letter also stated that Ruby Slipper was obligated under the lease to leave its equipment and fixtures in place, but the lease does not include such a provision.[25]  Over the next few months, Ruby Slipper and the Landlord negotiated the early termination of the lease, including Ruby Slipper's potentially leaving behind equipment and how

---

[16] *Id.*
[17] *Id.*
[18] *Id.* at 12.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.* at 15.
[25] *Id.*

much the Landlord would pay for it.[26]  On December 15, 2017, Ruby Slipper and the Landlord entered into a lease termination agreement whereby Ruby Slipper agreed to vacate the South Cortez Street location on December 31, 2017, taking all of its equipment, and the Landlord was not entitled to any more rent payments.[27]  Pursuant to the lease termination agreement, Ruby Slipper closed the restaurant at the South Cortez Street location on December 17, 2017, and vacated the premises on December 31, 2017.[28]

On January 2, 2018, Belou resigned from Ruby Slipper.[29]  On February 2, 2018, Belou registered CBH with the Louisiana Secretary of State's office to lease the South Cortez Street location and open and operate a new restaurant in the space.[30]  Belou put signs in the building's windows advertising that "BRUNCH is coming back to this location!!!"[31]

On February 14, 2018, Ruby Slipper filed this action against Belou and CBH alleging that Belou was improperly using trade secrets he obtained while working for Ruby Slipper to open and operate his new restaurant at the South Cortez Street location and that he breached (and stole the copy of) the confidentiality agreement that Ruby Slipper claims he signed.[32]  Ruby Slipper sought injunctive relief to stop Belou from doing so and made claims for damages for (1) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; (2) violation of the Louisiana Uniform Trade Secrets Act ("LUTSA"), La. R.S. 51:1431, *et seq.*; (3) violation of the Computer Fraud Abuse Act ("CFAA"), 18 U.S.C. § 1030; (4) violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. R.S. 51:1401, *et seq.*; (5) breach of contract; (6) bad faith breach of contract; (7) breach of implied covenant of good faith and fair dealing; (8) unjust enrichment; (9) conversion; (10) breach of fiduciary duties of loyalty and due

---

[26] *Id.* at 16.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.* at 17.
[31] *Id.*
[32] R. Doc. 1.

care; and (11) fraud.[33]   As to the claims sounding in contract, Ruby Slipper alleges that Belou

breached a confidentiality agreement that he signed in August 2015 as part of the consideration

for his employment at Ruby Slipper.[34]

On March 7, 2018, the Court[35] signed a consent temporary restraining order which

enjoined Defendants from using or disclosing any of Ruby Slipper's trade secrets or confidential

information and required Defendants to return documents, information, and material to Ruby

Slipper within forty-eight hours, while retaining a copy for "Attorneys' Eyes Only" and

otherwise destroying it so that Defendants could no longer access it.[36]   The Court set a

preliminary injunction hearing for April 3, 2018.[37]

On April 2, 2018, the parties filed a joint motion for preliminary injunction.[38]   The next

day, the Court entered the consent preliminary injunction which enjoined Defendants "from

directly or indirectly disclosing or making any use of any trade secrets or confidential

information of Ruby Slipper pending final resolution of this action."[39]

On April 24, 2018, Defendants filed the instant motion for summary judgment in which

they seek dismissal of all claims raised in Ruby Slipper's complaint.[40]   Ruby Slipper filed an

opposition to the Defendants' substantive arguments and also moved under Rule 56(d) of the

Federal Rules of Civil Procedure for the Court to defer ruling on Defendants' motion for

summary judgment until the parties could conduct further discovery.[41]   Defendants opposed

Ruby Slipper's Rule 56(d) motion,[42] and filed a reply memorandum in support of their motion

---

[33] R. Doc. 1 at 19-31.

[34] *Id.* at 8-9 & 25-27.

[35] This case was originally assigned to a different Section of this Court and was transferred to this Section upon the confirmation of the undersigned.  R. Doc. 101.

[36] R. Doc. 11.

[37] R. Doc. 12.

[38] R. Doc. 46.

[39] R. Doc. 50.

[40] R. Doc. 58.

[41] R. Doc. 77.

[42] R. Doc. 79.

for summary judgment.[43]  The Court granted Ruby Slipper's Rule 56(d) motion ordering that Ruby Slipper file a supplemental opposition to Defendants' motion for summary judgment by August 31, 2018, and that Defendants file a surreply by September 14, 2018.[44]

Thereafter, the Court granted Ruby Slipper leave to file its first amended complaint.[45] Ruby Slipper added allegations based on information obtained in discovery, including that Belou and the Landlord had agreed as early as 2015, years before Belou's resignation from Ruby Slipper, that the Landlord would lease the South Cortez Street location to Belou when Ruby Slipper vacated the premises.[46]  Ruby Slipper alleges that in the latter months of 2017, Belou and the Landlord had numerous telephone conversations and email communications in which Belou disclosed Ruby Slipper's trade secrets, elaborated on his attempts to get Ruby Slipper to terminate its lease early, and directed the Landlord's negotiations toward an early termination.[47] Additionally, Ruby Slipper added a claim against Belou for spoliation of evidence.[48]

Defendants did not re-file their motion for summary judgment to address the amended complaint.  However, after several extensions and additional reply memoranda, on January 25, 2019, the parties finished briefing the Defendants' motion for summary judgment.[49]  In the meantime, on July 13, 2018, Defendants filed an answer to Ruby Slipper's amended complaint, along with counterclaims for bad-faith assertion of trade-secret-misappropriation claims under 18 U.S.C. § 1836 and La. R.S. 51:1431, *et seq.*[50]  Thereafter, Ruby Slipper filed the pending motion to dismiss Defendants' counterclaims arguing that neither cited statute creates an independent

---

[43] R. Doc. 83.
[44] R. Doc. 81.
[45] R. Docs. 84 & 85.
[46] R. Doc. 85 at 17-18.
[47] *Id.* at 18.
[48] *Id.* at 27-28 & 43.
[49] R. Docs. 106, 115, 121 & 122.
[50] R. Doc. 87.

cause of action for alleged bad-faith assertion of trade secret claims, and even if they did, Defendant's allegations are conclusory and insufficient.[51]

## II.    LAW & ANALYSIS

### A. Defendants' Motion for Summary Judgment (R. Doc. 58)

#### 1.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial."  *Id*.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id*. at 323.  If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996).  The substantive law identifies which facts are material.  *Id*.  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).  "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are

---

[51] R. Doc. 91.

insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

## 2. DTSA and LUTSA

Ruby Slipper alleges that Defendants violated DTSA and LUTSA by misappropriating confidential information that constitutes trade secrets.[52] Defendants argue that Ruby Slipper cannot prevail on its DTSA or LUTSA claims because there is no evidence that they misappropriated any trade secrets.[53]

DTSA and LUTSA are substantially similar. To prevail on a DTSA claim, a plaintiff must prove: (1) the existence of a trade secret; (2) the misappropriation of the trade secret by another; and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce. 18 U.S.C. § 1836(b)(1).

LUTSA, Louisiana's enactment of the Uniform Trade Secrets Act, provides for restraining the "actual or threatened misappropriation" of trade secrets. La. R.S. 51:1432(A) & 1438-39. The statute also permits a complainant to recover damages, in addition to or in lieu of injunctive relief, for the actual loss caused by the misappropriation of trade secrets. *Id.* 51:1433. To prevail on a LUTSA claim, "'a complainant must prove (a) the existence of a trade secret, (b) a misappropriation of the trade secret by another, and (c) the actual loss caused by the misappropriation.'" *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 403 (5th Cir. 2000) (quoting *Reingold v. Swiftships, Inc.,* 126 F.3d 645, 648 (5th Cir. 1997)).

DTSA defines "trade secret" as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if –
>
> **(A)** the owner thereof has taken reasonable measures to keep such information secret; and

---

[52] R. Doc. 85 at 28-31.
[53] R. Doc. 58-1 at 15-19.

**(B)** the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). LUTSA's definition of "trade secret" is nearly identical.[54]

The "trade secrets" that Ruby Slipper alleges Defendants misappropriated include: (a) Ruby Slipper's second quarter 2017 financial results; (b) Ruby Slipper's confidential business strategy discussions concerning its lease and occupancy of the South Cortez Street location, specifically, whether to terminate the lease early; (c) a detailed supply history report from Alack Refrigeration; (d) a detailed listing of pay rate guidelines for various positions at Ruby Slipper; (e) certain of Ruby Slipper's recipes; (f) sales and scheduling data in Ruby Slipper's HotSchedules system; (g) general manager compensation information; (h) detailed quotes and lists of equipment and supplies purchased for restaurant openings; (i) proposed menu changes; (j) the organization chart; (k) handwritten notes regarding the Orange Beach location; (l) orders for small wares and tables; and (m) numerous unspecified trade secrets contained in the ten gigabytes of emails and electronic files that Belou returned following the Court's entry of the temporary restraining order.[55] Except for the HotSchedules documents, Defendants do not dispute Ruby Slipper's designation of this information as trade secrets for purposes of summary judgment.[56] Defendants argue that the HotSchedules documents cannot qualify as trade secrets because Ruby Slipper did not adequately protect the information considering that there is

---

[54] LUTSA defines a "trade secret" as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

La. R.S. 51:1431(4).
[55] R. Doc. 85 at 29-30.
[56] R. Doc. 115 at 4 n.2.

evidence that Belou's login access to HotSchedules was active for at least a month after he resigned from Ruby Slipper.[57]

"A trade secret 'is one of the most elusive and difficult concepts in the law to define.'" *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 613 (5th Cir. 2011) (quoting *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288 (5th Cir. 1978)). "Whether something is a trade secret is a question of fact." *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 796 (E.D. La. 2012) (citations omitted). "[T]he question of whether certain information constitutes a trade secret ordinarily is best 'resolved by a fact finder after full presentation of evidence from each side.'" *Tewari De-Ox Sys.*, 637 F.3d at 613 (quoting *Lear Siegler*, 569 F.2d at 289). "'The efforts required to maintain secrecy are those reasonable under the circumstances, and courts do not require extreme and unduly expensive procedures to be taken to protect trade secrets.'" *CheckPoint Fluidic Sys. Int'l*, 888 F. Supp. 2d at 796-97 (quoting *Sheets v. Yamaha Motors Corp., U.S.A.,* 849 F.2d 179, 183 (5th Cir. 1988)). Therefore, it is for the jury to determine whether the HotSchedules documents, or any of the other information cited by Ruby Slipper, qualifies as a "trade secret."

DTSA defines "misappropriation" as:

**(A)** acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

**(B)** disclosure or use of a trade secret of another without express or implied consent by a person who –

**(i)** used improper means to acquire knowledge of the trade secret;

**(ii)** at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was –

**(I)** derived from or through a person who had used improper means to acquire the trade secret;

---

[57] R. Doc. 83 at 4.

> **(II)** acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>
> **(III)** derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>
> **(iii)** before a material change of the position of the person, knew or had reason to know that –
>
> **(I)** the trade secret was a trade secret; and
>
> **(II)** knowledge of the trade secret had been acquired by accident or mistake[.]

18 U.S.C. § 1839(5). LUTSA's definition of "misappropriation" is nearly identical.[58] Further, the DTSA defines "improper means" as including "breach or inducement of a breach of a duty to maintain secrecy." *Id.* § 1839(6)(A). Whether a trade secret has been misappropriated is a question of fact. *Pontchartrain Med. Labs, Inc. v. Roche Biomedical Labs., Inc.*, 677 So. 2d 1086, 1091 (La. App. 1996).

There are questions of material fact regarding whether the information Belou acquired constitutes trade secrets, and how he acquired it, that preclude summary judgment as to whether

---

[58] "Misappropriation" is defined as:

> (a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (b) disclosure or use of a trade secret of another without express or implied consent by a person who:
>> (i) used improper means to acquire knowledge of the trade secret; or
>> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>>> (aa) derived from or through a person who had utilized improper means to acquire it;
>>> (bb) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>> (cc) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>> (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

La. R.S. 51:1431(2).

he misappropriated the alleged trade secrets. Belou contends that he had access to the alleged trade secrets within the scope of his work with Ruby Slipper and thus he did not misappropriate them.[59] Ruby Slipper, on the other hand, contends that, in October 2017, Belou had no legitimate business reason to access the information, and points out that, in his deposition, Belou could not think of a legitimate business reason for doing so.[60] Both sides present testimony telling different stories, so there are disputed issues of material fact regarding Belou's alleged misappropriation of trade secrets.

Moreover, there are disputed issues of material fact regarding whether Belou used or disclosed Ruby Slipper's trade secrets. Defendants argue that there is no proof of disclosure or use.[61] However, Ruby Slipper presents evidence from which a jury could reasonably conclude that Belou used or disclosed the trade secrets, including his communications with the Landlord and the fact that he accessed numerous Ruby Slipper documents for which Ruby Slipper contends he did not have a legitimate business purpose, just before departing the company.[62] Because there are numerous disputed issues of material fact regarding the alleged misappropriation, Defendants' motion for summary judgment is DENIED as to Ruby Slipper's DTSA and LUTSA claims.

### 3. LUTPA and Breach of Fiduciary Duty

Ruby Slipper alleges that Defendants engaged in unfair competition and deceptive acts by misappropriating Ruby Slipper's trade secrets, improperly accessing Ruby Slipper's computer systems, breaching a fiduciary duty, and committing fraud.[63]

LUTPA provides a civil cause of action to recover actual damages to "[a]ny person who suffers any ascertainable loss of money or movable property … as a result of the use or

---

[59] R. Doc. 58 at 17-18 & R. Doc. 83 at 3-5.
[60] R. Doc. 106 at 3-10.
[61] R. Doc. 58 at 18-19 & R. Doc. 83 at 6-7.
[62] R. Doc. 106 at 10-12.
[63] R. Doc. 85 at 35.

employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405." La. R.S. 51:1409. Section 51:1405(A) declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Courts determine "on a case-by-case basis" what conduct constitutes an "unfair trade practice" and "have repeatedly held that, under this statute, the plaintiff must show the alleged conduct offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1059 (La. 2010) (quotation and citations omitted). A trade practice that amounts to fraud, deceit, or misrepresentation is "deceptive" for purposes of LUTPA. *Total Safety v. Rowland*, 2014 WL 6485641, at * 4 (E.D. La. Nov. 18, 2014) (citations omitted).

Additionally, "LUTPA recognizes a claim for breach of fiduciary duty that rests on the misappropriation of information that is confidential but not a trade secret." *CheckPoint Fluidic Sys. Int'l*, 888 F. Supp. 2d at 795 (citing *Defcon, Inc. v. Webb*, 687 So. 2d 639, 642-43 (La. App. 1997)). An employer may recover under LUTPA when "'a former employee breaches his duty not to use his former employer's confidential information.'" *Id.* (quoting *L-3 Commc'ns Westwood Corp. v. Robichaux*, 2008 WL 577560, at *5 (E.D. La. Feb. 29, 2008)); *Harrison v. CD Consulting, Inc.*, 934 So. 2d 166, 170 (La. App. 2006) ("historically, an employee's breach of his fiduciary duty to his employer has been contemplated in instances when an employee has engaged in dishonest behavior or unfair trade practices for the purpose of his own financial or commercial benefit"); *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F. Supp. 2d 521, 535 (E.D. La. 2007) ("Thus, the question of breach of fiduciary duty or loyalty as an employee collapses into the question of whether the employee's actions constitute unfair trade practices, which is defined in the [LUTPA]"). To prevail on a breach of fiduciary duty claim based on a breach of confidence, a plaintiff must prove: (1) that it possesses knowledge or information that is not generally known; (2) that it communicated the knowledge or information to the defendant

under an express or implied agreement limiting the defendant's use or disclosure of the information; and (3) that the defendant used or disclosed the knowledge or information in violation of the confidence, resulting in injury to the plaintiff. *Defcon*, 687 So. 2d at 643 (citing *Engineered Mech. Servs., Inc. v. Langlois*, 464 So. 2d 329, 334 (La. App. 1984)).

Essentially, Ruby Slipper alleges that Belou violated LUTPA by improperly accessing confidential information on Ruby Slipper's computers and using that confidential information for his own, and CBH's, benefit. Defendants argue that Ruby Slipper cannot prevail on its LUTPA and breach-of-fiduciary-duty claims because Belou was not subject to a non-compete agreement, and thus did not owe to Ruby Sipper a duty to report his plans to open a competing restaurant.[64] Defendants further argue that Belou was not involved in the Landlord's offer to allow Ruby Slipper to terminate the lease early.[65] Defendants contend that Ruby Slipper's breach-of-fiduciary-duty claim "boils down to whether Ruby Slipper chose to terminate the lease four (4) months early solely because a single employee, Mr. Belou, advised it to do so."[66] Defendants argue that a reasonable jury could not possibly find that to be the case because Belou's job was not one that carried that much weight, the meeting minutes do not mention that he advocated for early termination of the lease, and Ruby Slipper had independent business reasons to accept the early termination offer, such as avoiding a dispute about the rent and selling a majority interest in the business to a private equity firm, instead of the Landlord.[67] Finally, Defendants argue that Ruby Slipper has not provided any evidence that it was injured by Belou's actions because the competing restaurant did not open at the South Cortez Street location until after Ruby Slipper's lease would have terminated on April 30, 2018, nor has Ruby Slipper produced any evidence demonstrating that it would be in a better position today if it had not terminated the lease early.[68]

---

[64] R. Doc. 58-1 at 14.
[65] *Id.* at 15.
[66] *Id.*
[67] *Id.*
[68] R. Doc. 83 at 8.

15

Ruby Slipper argues that there are disputed issues of material fact that preclude summary judgment on its breach-of-fiduciary-duty and LUTPA claims.[69] Ruby Slipper contends that Belou breached a fiduciary duty he owed to it, his employer, by acting antagonistically to its interests in negotiating with the Landlord and trying to obtain its equipment behind Ruby Slipper's back while he was still employed by the restaurant.[70] Ruby Slipper also argues that there are disputed issues of fact regarding causation because the Weishaupts both testified that they would not have left the South Cortez Street location early but for their reliance on Belou's expertise in the restaurant industry and his long history with the company to convince them to do so.[71] Ruby Slipper argues that whether it relied on Belou's advice regarding the early termination is a fact question for a jury.[72] Further, Ruby Slipper argues that its LUTPA claims are also based on misappropriation of trade secrets or confidential information, improper access to its computers, and fraud, which are not addressed in Defendants' motion for summary judgment.[73]

Belou contends that Ruby Slipper has not proved it suffered an ascertainable loss of money or property or specific injury as a result of Belou's actions because Belou's competing restaurant opened at the South Cortez Street location in June 2018, after Ruby Slipper's lease would have expired on April 30, 2018, and Ruby Slipper did not leave any of its kitchen equipment at the South Cortez Street location. However, Ruby Slipper responds that it did forego alternative plans for the South Cortez Street location by terminating the lease early, and it would have foregone salary payments to Belou by firing him had he disclosed his plans to open a competing restaurant.[74] Hence, numerous disputed issues of material fact preclude summary judgment at this juncture. Defendants' motion for summary judgment is DENIED as to Ruby

---

[69] R. Doc. 77 at 10-14.
[70] *Id.* at 11.
[71] *Id.* at 12-13.
[72] *Id.* at 13.
[73] *Id.* at 13-14.
[74] *Id.* at 26-27.

Slipper's breach-of-fiduciary-duty and LUTPA claims, including those based on misappropriation of trade secrets or confidential information, improper access to Ruby Slipper's computers, and fraud, which are not addressed in Defendants' motion.

### 4. Breach of Contract, Bad Faith Breach of Contract & Breach of Implied Covenant of Good Faith and Fair Dealing

Ruby Slipper alleges that Belou is liable for breach of contract, bad faith breach of contract, and breach of an implied covenant of good faith and fair dealing in failing to perform under the confidentiality agreement.[75]

"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. Under Louisiana law, the formation of a valid contract requires: (1) capacity to contract; (2) mutual consent; (3) a certain object; and (4) a lawful purpose. *Id.* arts. 1918, 1927, 1966 and 1971. "The burden of proof in an action for breach of contract is on the party claiming rights under the contract." *Rebouche v. Harvey*, 805 So. 2d 332, 334 (La. App. 2001). "The existence of the contract and its terms must be proved by a preponderance of the evidence." *Id.*

Belou argues that he is entitled to summary judgment on Ruby Slipper's contract-based claims because he denies that he ever signed a confidentiality agreement with Ruby Slipper and there is no conclusive evidence that he did.[76] Ruby Slipper, on the other hand, argues that whether Belou signed the confidentiality agreement is a disputed issue of fact.[77] Ruby Slipper points out that three Ruby Slipper witnesses, Jennifer Weishaupt, Roland Gilfour, and Melissa Burchardt, all testified that they attended a meeting on August 6, 2015, where managers were given the confidentiality agreement and told to sign it, and that Belou was at the meeting and signed the agreement.[78] Ruby Slipper argues that, although it has not been able to locate a copy

---

[75] R. Doc. 85 at 36-38.
[76] R. Doc. 20-21.
[77] R. Doc. 77 at 21.
[78] *Id.* at 21-22.

of Belou's signed confidentiality agreement, there is evidence from which a jury can determine that Belou stole it because he had access to the files and is the only manager whose file did not include the document.[79]   Ruby Slipper further argues that Belou's admission that he acknowledged receipt of the confidentiality agreement while using Ruby Slipper's computer system could be found by a jury to be an acceptance of the contract under the Louisiana Uniform Electronic Transactions Act, La. R.S. 9:2601, *et seq.*[80]   For all the reasons pointed out by Ruby Slipper, there are disputed issues of material fact that preclude summary judgment on Ruby Slipper's contract-based claims, and Belou's motion for summary judgment on those claims is DENIED.

### 5.   Unjust Enrichment

Defendants argue that they are entitled to summary judgment on Ruby Slipper's unjust enrichment claim because Ruby Slipper has other remedies at law available.[81]   Ruby Slipper, on the other hand, argues that it should be able to maintain its claim for unjust enrichment until it is conclusively determined that another remedy at law is available.[82]

Louisiana Civil Code article 2298 provides the basis for an action based on unjust enrichment, or *action de in rem verso*.   Article 2298 states: "A person who has been enriched without cause at the expense of another person is bound to compensate that person."   The Louisiana supreme court has held that the five requirements for establishing a cause of action for unjust enrichment are:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff.

---

[79] *Id.* at 22.
[80] *Id.* at 23-24.
[81] R. Doc. 58-1 at 19-20.
[82] R. Doc. 77 at 21.

*Baker v. Maclay Props. Co.*, 648 So. 2d 888, 897 (La. 1995) (citations omitted).  Article 2298 expressly states that the remedy of unjust enrichment "is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule."  La. Civ. Code art. 2298.  A plaintiff is precluded from seeking recovery under a theory of unjust enrichment if it pleads another cause of action, regardless of whether the plaintiff is successful on the other theory of recovery.  *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 243, 244 (La. 2010).  Thus, if the law provides the plaintiff with another remedy, the plaintiff "has failed to state a cause of action in unjust enrichment."  *Id.*

Ruby Slipper has alleged and may continue to pursue claims under DTSA, LUTSA, LUTPA, breach-of-fiduciary-duty, and contract-based theories.  Because Ruby Slipper has these remedies at law, it may not proceed with its unjust enrichment claim at this stage of the litigation.  As such, Defendants' motion for summary judgment is GRANTED as to Ruby Slipper's unjust enrichment claim, and that claim is DISMISSED WITH PREJUDICE.

### 6. Conversion

Defendants argue that Ruby Slipper's conversion claim is preempted by its LUTSA claim.[83]  Ruby Slipper does not dispute that its conversion claim concerning trade secrets is preempted by LUTSA, but argues that "to the extent, if at all, that Ruby Slipper's paper and electronic files are deemed not to be trade secrets, they are subject to Ruby Slipper's conversion claim."[84]  The Court agrees.

LUTSA provides that it "displaces conflicting tort, restitutionary, and other laws of [Louisiana] pertaining to civil liability for misappropriation of a trade secret."  La. R.S. 51:1437(A).  However, LUTSA "does not apply to duties imposed by law that are not dependent upon the existence of a trade secret."  *Defcon*, 687 So. 2d at 643 (citing La. R.S. 51:4137 cmt.); *see also* La. R.S. 51:4137(B) ("This Chapter does not affect: … contractual or other civil liability

---

[83] R. Doc. 58-1 at 19.
[84] R. Doc. 77 at 20.

or relief that is not based upon misappropriation of a trade secret."). The Fifth Circuit recently held "that LUTSA does not preempt civilian law claims for conversion of information that does not constitute a trade secret under LUTSA." *Brand Servs., L.L.C. v. Ibex Corp.*, 909 F.3d 151, 159 (5th Cir. 2018). Under this holding, the court allowed the plaintiff to pursue its claim for the conversion of confidential information outside the definition of a trade secret. *Id.*

In this case, Ruby Slipper alleges that Defendants converted "Confidential Information [that] constitutes valuable property belonging to Ruby Slipper."[85] To the extent that any such "confidential information" is not deemed to constitute a trade secret, Ruby Slipper may pursue its conversion claim directed to such information, and Defendants' motion for summary judgment is DENIED as to Ruby Slipper's conversion claim.

### 7. Fraud

Under Louisiana law, "fraud" is defined as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other" and can also result from silence or inaction. La. Civ. Code art. 1953. "'[T]he refusal to speak in the face of an obligation to do so, is not merely unfair but is fraudulent.'" *Lomont v. Bennett*, 172 So. 3d 620, 629 (La. 2015) (quoting *Greene v. Gulf Coast Bank*, 593 So. 2d 630, 632 (La. 1992)). The elements of a fraud cause of action are: (1) "a misrepresentation of material fact"; (2) "made with the intent to deceive"; and (3) "a reasonable and justifiable reliance by the plaintiff and resulting injury." *Riedel v. Fenasci*, 2018 WL 6839564, at *9 (La. App. Dec. 28, 2018). A plaintiff must prove fraud by a preponderance of the evidence, and "[c]ircumstantial evidence, including highly suspicious facts and circumstances, may be considered in determining whether fraud has been committed." *Lomont v. Bennett*, 172 So. 3d 620, 629 (La. 2015*)* (citations omitted).

---

[85] R. Doc. 85 at 38.

"To find fraud from silence or suppression of the truth, there must exist a duty to speak or disclose information." *La. State Univ. Sys. Research & Tech. Found. v. Qyntess Biologics, LLC*, 168 So. 3d 468, 474 (La. App. 2014) (citations omitted). Whether someone has "a duty to speak depends on the nature of the relationship between the parties and the nature of the information allegedly suppressed." *Id.* (citations omitted). There is a duty to disclose when the parties have a confidential or fiduciary relationship where one imposes a special relationship of confidence or trust on another "who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Id.* (citation omitted). "A fiduciary cannot further his own interests and enjoy the fruits of an advantage of such a relationship and must make a full disclosure of all material facts surrounding the transaction that might affect the decision of his principal." *Id.* (citation omitted).

Defendants argue that none of Belou's statements that Ruby Slipper alleges were fraudulent is an actionable misrepresentation.[86] Defendants further argue that it is unreasonable that Ruby Slipper would have relied on Belou's alleged statements and that Ruby Slipper has not proved that it was damaged by any such reliance.[87]

Ruby Slipper contends that Belou's failure to speak is actionable as fraud because he had a duty to act in Ruby Slipper's best interest, but instead was engaged in secret negotiations with the Landlord for his own benefit while still employed by Ruby Slipper.[88] Further, Ruby Slipper argues that it was justified in relying on Belou's statements and his omissions due to the parties' fiduciary relationship in which Belou was a trusted advisor of Ruby Slipper.[89] Ruby Slipper contends that it was harmed by Belou's fraudulent acts and omissions because it missed out on the profits that it could have earned in operating the South Cortez Street location for the four-month period after the early termination.[90]

---

[86] R. Doc. 58-1 at 23-24.
[87] *Id.* at 24-25.
[88] R. Doc. 77 at 24-25.
[89] *Id.* at 25-26.
[90] *Id.* at 26-27.

Ruby Slipper alleges that Belou committed fraud by telling the Ruby Slipper executive leadership team that Ruby Slipper should terminate the lease early and vacate the South Cortez Street location by the end of 2017; it would be "crazy" to remain at the South Cortez Street location through the end of the lease term; it was "stretched too thin" to remain at the South Cortez Street location though the end of the lease term while also operating the restaurant on South Broad Street; and the restaurant equipment at the South Cortez Street location had little or no value.[91] Ruby Slipper also alleges that Belou committed fraud by telling it that he did not know what he would do after he resigned.[92]

The statements that Belou made to the Ruby Slipper executive leadership team regarding whether Ruby Slipper should terminate the lease early and the value of the equipment at the South Cortez Street location are merely opinions, not statements of fact. A cause of action for fraud requires a statement of fact. *Riedel*, 2018 WL 6839564, at *4. Further, although Belou's statement to Ruby Slipper that he did not know what he was going to do after his resignation was a false statement of material fact, Ruby Slipper has not shown how it relied on that statement. The statement was made after Ruby Slipper had already terminated the lease early. Thus, Ruby Slipper could not have relied on the statement to make that decision. Therefore, none of Belou's alleged statements that are referenced in the complaint is actionable as fraud.

However, Ruby Slipper also alleges that Belou committed fraud by failing to reveal that, while he was employed at Ruby Slipper, he was negotiating with the Landlord to operate his own restaurant at the South Cortez Street location once Ruby Slipper's lease terminated.[93] Ruby Slipper contends that Belou was a highly trusted member of the executive leadership team and thus had a fiduciary relationship and was required to act in Ruby Slipper's best interest.[94] Ruby

---

[91] R. Doc. 85 at 40-41.
[92] *Id.* at 41.
[93] *Id.*
[94] R. Doc. 77 at 24-26.

Slipper contends that it relied on Belou to deal honestly with Ruby Slipper, and Belou presents no evidence to the contrary.[95]  Although Ruby Slipper has not yet determined the amount of profits it alleges it lost by vacating the South Cortez Street location early, Ruby Slipper's expert reports are not due until August 12, 2019.[96]  Even without such reports, there are disputed issues of material fact regarding Ruby Slipper's fraud claim, and Defendants' motion for summary judgment on that claim is DENIED.

### 8.  CFAA

CFAA prohibits unauthorized access to protected computers for the purpose of obtaining information, causing damage, or perpetrating fraud.  18 U.S.C. § 1030(a)(2), (a)(4) & (a)(5).  A "protected computer" is "a computer … which is used in or affecting interstate or foreign commerce or communication."  *Id.* § 1030(e)(2)(B).  Any computer connected to the internet qualifies as a "protected computer."  *Complete Logistical Servs., LLC v. Rulh*, 2018 WL 4963571, at *6 (E.D. La. Oct. 15, 2018) (collecting cases).  CFAA provides a civil cause of action to obtain compensatory damages and injunctive or other equitable relief to "[a]ny person who suffers damage or loss by reason of a violation of [the CFAA]" if the conduct involves one of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).  18 U.S.C. § 1030(g).  Those factors include "loss to 1 or more persons during any 1-year period ... aggregating at least $5,000 in value."  *Id.* § 1030(c)(4)(A)(i)(I).

Ruby Slipper alleges that Belou improperly violated CFAA by accessing Ruby Slipper's computers to take confidential electronic data to start a competing business, deleting Ruby Slipper's computer files before resigning, and accessing HotSchedules after his resignation.[97] Ruby Slipper contends that the access was unauthorized because it was in violation of the

---

[95] *Id.*
[96] *Id.* at 20 & R. Doc. 116 at 2.
[97] R. Doc. 85 at 34.

confidentiality agreement and in breach of Belou's fiduciary duty to Ruby Slipper.[98] Ruby Slipper contends that it will spend more than $5,000 in a one-year period investigating Belou's acts and restoring its data.[99]

Belou argues that Ruby Slipper cannot prevail on this claim because there is no evidence that he signed a confidentiality agreement, disclosed any of Ruby Slipper's trade secrets to anyone, breached a fiduciary duty, or intended to defraud.[100] Ruby Slipper contends that summary judgment is inappropriate because there are disputed issues of material fact regarding the existence of the confidentiality agreement, Belou's alleged disclosure of trade secrets, his breach of a fiduciary duty, and his intent to defraud.[101] As previously explained, there are disputed issues of material fact on those points, so Defendants' motion for summary judgment is DENIED as to Ruby Slipper's CFAA claim.

## B. Ruby Slipper's Motion to Dismiss Defendants' Amended Counterclaims (R. Doc. 91)

Defendants raise counterclaims for attorney's fees under DTSA, 18 U.S.C. § 1836(b)(3)(D), and LUTSA, La. R.S. 51:1434, alleging that Ruby Slipper brought the trade secrets claims in bad faith.[102] Ruby Slipper moves to dismiss Defendants' counterclaims arguing that DTSA and LUTSA do not provide stand-alone causes of action for attorney's fees, but rather, that any such claims should be made by motion pursuant to Rule 54 of the Federal Rules of Civil Procedure.[103] Ruby Slipper also argues that, if such claims exist, Defendants did not adequately allege them.[104] Defendants argue that the attorney's fees claims are permitted by DTSA and LUTSA, and that they are properly alleged.[105]

---

[98] *Id.* at 33-34.
[99] *Id.* at 34-35.
[100] R. Doc. 58-1 at 25-26.
[101] R. Doc. 77 at 27-28.
[102] R. Doc. 87 at 23-24.
[103] R. Doc. 91-1 at 3-5.
[104] *Id.* at 5-8.
[105] R. Doc. 93 at 3-8.

### 1. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Motions to dismiss are disfavored and

rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Id.* However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Hawk Aircargo, Inc. v. Chai.*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### 2. Attorney's Fees under DTSA and LUTSA

DTSA provides:

> if a claim of the misappropriation is made in bad faith, which may be established by circumstantial evidence, a motion to terminate an injunction is made or opposed in bad faith, or the trade secret was willfully and maliciously misappropriated, [a court may] award reasonable attorney's fees to the prevailing party.

18 U.S.C. § 1836(b)(3)(D). Similarly, LUTSA states that, "[i]f a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." La. R.S. 51:1434. Rule 54(d)(2) of the Federal Rules of Civil Procedure provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless substantive law requires those fees to be proved at trial as an element of damages."

The parties dispute whether a defendant's claims for attorney's fees under DTSA and LUTSA can be raised as counterclaims. The parties have not cited, and the Court's independent research has not revealed, any dispositive jurisprudence on the issue. Rather, there are two cases that suggest such claims can be raised as counterclaims. In *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, 2017 WL 5572616, at *3 (E.D. La. Nov. 20, 2017), without discussing the propriety of such claims, the court dismissed the defendants' counterclaims for attorney's fees brought under LUTSA finding that the defendants did not allege sufficient facts to support a finding of bad faith. Further, in *Olympia Minerals, LLC v. HS Resources, Inc.*, 123 So. 3d 281, 306 (La. 2013), the Louisiana supreme court suggested that a claim for attorney's fees under LUTSA can be raised as a counterclaim or in a post-trial motion when it stated such a claim was not before the court because the defendant "neither specifically plead the issue of attorney fees for defending the LUTSA and LUTPA claims, nor raised the issue in the trial court after the trial court issued its Reasons for Judgment and prior to renditions of the Final Judgment."

Considering the lack of clear authority on the issue, the Court will permit Defendants to maintain their counterclaims for attorney's fees under DTSA and LUTSA at this stage of the case. Further, Defendants' counterclaims are adequately pleaded because they place Ruby Slipper on sufficient notice of the claims by alleging that Ruby Slipper brought the DTSA and LUTSA claims in bad faith. As such, Ruby Slipper's motion to dismiss is DENIED.

**III.    CONCLUSION**

Accordingly,

IT IS ORDERED that Defendants' motion for summary judgment (R. Doc. 58) is GRANTED as to Ruby Slipper's unjust enrichment claim. The motion is otherwise DENIED.

IT IS FURTHER ORDERED that the Ruby Slipper's motion to dismiss Defendants' amended counterclaims (R. Doc. 91) is DENIED.

New Orleans, Louisiana, this 19th day of March, 2019.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE