UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE RUBY SLIPPER CAFE, LLC, | ) ) ) | Civil Action No.: 2:18-CV-01548 |
| Plaintiff, | ) ) | Judge: BARRY ASHE |
| versus | ) ) | Magistrate: KAREN WELLS ROBY |
| CHRISTOPHER BELOU and CB HOSPITALITY, LLC, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUPPLEMENTAL FORENSIC EXAMINATION PURSUANT TO THE COURT'S ORDER ON PROTOCOL FOR COMPUTER FORENSIC EXAMINATION**

Plaintiff The Ruby Slipper Café, LLC ("Ruby Slipper"), by and through its counsel, submits this Memorandum in Support of its Motion for Supplemental Forensic Examination Pursuant to the Court's Order on Protocol for Computer Forensic Examination ("Motion").

Plaintiff seeks to examine undisclosed computers of Defendants Christopher Belou ("Belou") and CB Hospitality, LLC ("CBH") (collectively, "Defendants"). As the Court knows from Ruby Slipper's *Ex Parte* Motion for Seizure of Trade Secret Information ("Motion for Seizure") (Rec. Doc. 133), numerous former employees of Defendants' restaurant, Fullblast Brunch, have signed affidavits testifying that Belou – despite all of their representations to the contrary and despite a Temporary Restraining Order and a Preliminary Injunction requiring Defendants to return, delete, and not use all Ruby Slipper information in their possession, custody, or control – kept numerous Ruby Slipper recipes hidden at Fullblast Brunch and used them to prepare food and drink items for sale to their customers.

These same former employees have provided eyewitness testimony that Defendants kept two computers at Fullblast Brunch – a laptop and a tower desktop – neither of which Defendants disclosed or made available for forensic examination as required by the Court's Order on Protocol for Computer Forensic Examination ("Computer Forensics Order") (Rec. Doc. 100), an Order that was entered because of Belou's admitted spoliation of evidence.  In fact, Belou not only concealed the existence of these two computers, he affirmatively represented to the Court and to Ruby Slipper that the *only* computer that Defendants possessed or used was a Hewlett-Packard all-in-one computer, which is neither a desktop tower nor a laptop and, therefore, could not possibly be one of the two computers at Fullblast Brunch.

Moreover, when Ruby Slipper invited Defendants to provide proof that the two newly identified computers were acquired after issuance of the Computer Forensics Order, they fell silent.  The only reasonable inference from this silence is that Defendants possessed the two computers at the time the Court issued the Computer Forensics Order but concealed them from the Court and from Ruby Slipper in order to avoid subjecting them to a forensic examination.  And no wonder: one of the former employees testified that Belou showed him Ruby Slipper emails on the desktop tower computer at Fullblast Brunch, a *year* after they were supposed to have been deleted, and another testified that Belou said he was required to delete Ruby Slipper documents from a computer but kept them anyway.

Defendants' efforts to mislead the Court, avoid its Orders, and hide critical information are beyond the pale.  The Court should order Defendants to immediately identify *all* electronic devices they have ever owned or used since January 1, 2018 and certify under oath (directly and not through counsel) that they have done so; and submit all such devices to the same forensic examination set forth in the Computer Forensics Order, again at Defendants' sole expense.  The

Court also should award Ruby Slipper the costs, including attorneys' fees, that it has incurred and will incur in connection with both this Motion and any supplemental computer forensics order issued by the Court, including but not limited to Ruby Slipper's review of the results of any such supplemental examination.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 14, 2018, Ruby Slipper filed its Verified Complaint ("Complaint") (Rec. Doc. 1). Ruby Slipper also moved for entry of a temporary restraining order that would, among other relief, require Defendants to return to Ruby Slipper and to not use any and all Ruby Slipper trade secrets and confidential information ("TRO Motion") (Rec. Doc. 3). Defendants did not oppose the TRO Motion; in fact, they agreed to the entry of a Consent Temporary Injunction Order ("Consent TRO"), including all of the relief that Ruby Slipper had sought as regards the return and non-use of trade secrets (Rec. Doc. 11).

Specifically, the March 7, 2018 Consent TRO enjoined and restrained Defendants "from directly or indirectly disclosing or making any use of any trade secrets or confidential information of Ruby Slipper." Rec. Doc. 11, ¶1. The Consent TRO also required Defendants, within 48 hours, to "return all documents, information and material however stored and maintained relating to the Ruby Slipper (e.g., paper or electronic files) (collectively, 'Returned Information')" and "then destroy, delete and purge any Returned Information such that, once delivered to Ruby Slipper and counsel for [Defendants], the Returned Information can no longer be accessed or used by [Defendants]." *Id.* ¶2. Following these actions, the Court ordered Defendants to "certify to Ruby Slipper that they have completed that process." *Id.* On March 9, 2018, Defendants' counsel – but ***not*** Defendants themselves – certified that, "Mr. Belou has deleted all electronic materials and no longer has access to those materials." March 9, 2018 Letter from Gregory D. Latham (attached at *Exhibit* A hereto).

The Consent TRO was followed, on April 3, 2018, by a Consent Preliminary Injunction ("Consent PI") (Rec. Doc. 50). Like the Consent TRO, the Consent PI restrained and enjoined Defendants "from directly or indirectly disclosing or making any use of any trade secrets or confidential information of Ruby Slipper pending final resolution of this action." Rec. Doc. 50, ¶1.

Meanwhile, during the course of discovery, Belou admitted under oath that, despite being placed on clear notice of both the possibility of litigation and his obligation to preserve evidence, he took additional steps to cover his tracks by intentionally deleting relevant emails. *See* Belou Depo. Tr. (attached at *Exhibit* B hereto), at 68:2 – 71:1. In light of this admission, Ruby Slipper moved for sanctions against Defendants for spoliation of evidence, including but not limited to an order allowing Ruby Slipper to conduct a forensic examination of Defendants' personal electronic devices (Rec. Doc. 32).

On September 7, 2018, as a result of Belou's admitted spoliation of evidence, the Court entered the Computer Forensics Order, requiring Belou to identify, and to pay a neutral forensic consultant to image and run extensive searches on, his electronic devices, all at Defendants' expense. Pursuant to this Order, Belou identified and submitted for examination ***a single desktop computer***; specifically, an HP Pavilion All-In-One, Model 24-b214 (the "HP Pavilion").[1] *See* Rec. Doc. 100. ¶1; Rec. Doc. 133-2, at 2. As part of the Order, Belou expressly represented "that the aforementioned Devices are the only electronic devices in his possession, custody, or control, where Belou has created, modified, stored, transferred, or deleted files and/or received, sent, stored, or deleted electronic communications."[2] Rec. Doc. 100, ¶1.

---

[1] Belou also identified and submitted an iPhone 5 and two external flash drives.

[2] Ruby Slipper also served an interrogatory asking Defendants to "[i]dentify all computers, laptop computers, tablets, smartphones, and external storage devices owned or leased by You." On July 15, 2018 Defendants

The consultant then performed a forensic analysis on the HP Pavilion, which revealed that literally thousands of Ruby Slipper emails – a treasure trove of confidential information and trade secrets – were stored on the computer's hard drive. *See* Rec. Doc. 106-1, ¶¶171-79, 182-99. After this discovery, the consultant, at the parties' direction, permanently removed all of the Ruby Slipper emails from the HP Pavilion. *See* Certification of Brian Wilson (attached at *Exhibit* D hereto).

It thus appeared, based on Belou's sworn statements and the consultant's certification, that Ruby Slipper's confidential information finally had been removed from Defendants' possession. However, recent eyewitness testimony has clearly shown this not to be the case. Despite Belou's repeated denials, under oath, that he took, kept, used, or disclosed any Ruby Slipper recipes – and his claims that he complied fully with the Consent TRO, Consent PI, and Computer Forensics Order – ***four former employees*** of Fullblast Brunch recently signed affidavits attesting, on personal knowledge, that Belou: (1) kept a folder of Ruby Slipper recipes in a plastic storage container under his desk at Fullblast Brunch; (2) kept additional Ruby Slipper recipes hidden between the pages of cookbooks; (3) served food and drinks at Fullblast Brunch that were made using Ruby Slipper recipes; and (4) required his head chef to come in before any of the other employees in order to prepare dishes with the Ruby Slipper recipes in secret. *See* Rec. Doc. 133-2, at 3-20; *see also* Affidavit of Michelle Castelin ("Castelin Aff."), attached at *Exhibit* E hereto.

The former employees' affidavits also show Belou's certification that the HP Pavilion was his only computer was not true. While the HP Pavilion was an all-in-one device (*i.e.* the computer and monitor are a single unit, *see* Rec. Doc. 133-2, at 21), the computers located at Fullblast Brunch were a tower desktop (*i.e.* a separate computer and monitor) and a laptop. *See id.* at 17, 20; Castelin

---

answered as follows: "Defendants currently own the following: HP desktop, Apple Iphone 5, and two external flash drives." Defendants' Responses to Plaintiff's Second Set of Interrogatories, at 7 (attached at *Exhibit* C hereto).

Aff., ¶10. Former Fullblast Brunch server Michelle Castelin testified that she worked for Defendants at the time their restaurant opened in June of 2018. *Castelin Aff.,* ¶ 5. She testified that during this time—i.e., the same time for forensic protocol was entered—Belou kept two computers at the restaurant—a laptop and a desktop with a tower. She also testified that Belou showed her Ruby Slipper emails on the desktop computer—long after he was required to delete these emails in compliance with the Consent TRO. *See id.* at ¶ 10. Moreover, former Fullblast Brunch employee Michael Smith testified that, "[a]t one point during my employment at Fullblast Brunch, Belou discussed with me that he was required to delete some Ruby Slipper documents on his computer, but that he kept them anyway." Rec. Doc. 133-2, at 6, ¶18. Notably, Smith became employed at Fullblast Brunch in March 2019 – a *year* after the Court entered the Consent TRO and Consent PI. *See id.* at 5, ¶14.

Based primarily on the former employees' affidavits (except the Castelin Affidavit, which was not obtained until after Plaintiff filed its motion), the Court issued an *ex parte* civil seizure order under the Defend Trade Secrets Act (the "Seizure Order"), specifically finding, among other things, that:

- Defendants "disregard[ed] … this Court's Orders" and demonstrated a "willingness to destroy or hide relevant evidence."[3] Rec. Doc. 134, ¶3.

- Absent a seizure order, "immediate and irreparable injury to Ruby Slipper is almost certain in the form of loss of trade secrets and the destruction of probative evidence." *Id.* ¶4.

- "It appears that Defendants still have Ruby Slipper's recipes in their [sic] position notwithstanding the Court's prior orders and the Defendants' certification to the contrary." *Id.* ¶5.

---

[3] On the day he left Fullblast Brunch in July 2019, one of the affiants, Michael Smith, "advised Chris [Belou] that I intended to tell the Weishaupts what he was doing." Rec. Doc. 133-2, at 4. Smith also sent a LinkedIn message to Belou on July 6, 2019, stating, "I informed the [R]uby [S]lipper about everything[.]" *Id.* at 9. It is not surprising, therefore, that when the U.S. Marshals executed the seizure on September 30, they found no Ruby Slipper recipes. *See* Rec. Doc. 135. Plainly, Defendants removed the Ruby Slipper recipes from the premises after Smith threatened to "spill the beans" to Ruby Slipper, thus continuing to exhibit a "willingness to destroy or hide relevant evidence."

- "Ruby Slipper is likely to succeed in showing that the recipes in question are protectable as trade secrets and that their continued possession by Defendants is a direct violation of this Court's orders." *Id.* ¶11.

- "Ruby Slipper is likely to succeed in showing that Defendants have misappropriated trade secrets by improper means, as provided by the DTSA." *Id.* ¶12.

The Seizure Order covered "any physical documents, information, or material related to the Ruby Slipper found on the premises at 139 South Cortez Street, New Orleans, Louisiana … by the U.S. Marshals." *Id.* at 4. The Court did not order the seizure of Defendants' computers, however, as an *ex parte* seizure requires "extraordinary circumstances" and the affidavits did not include "any information regarding when the computers were purchased[.]" *Id.* at 1 n.1.

In an attempt to address the Court's concern about the purchase date of the computers, Ruby Slipper's counsel asked Defendants' counsel to provide the following information: (1) a photograph of each computer; (2) the make, model, and serial number of each computer; (3) the date of purchase of each computer, along with proof of purchase; (4) a description of where the computers have been located; and (5) the identity of every person who used and/or had access to the computers. *See* September 30, 2019 Letter from David Patrón (attached at *Exhibit* F hereto), at 2. The requested information has never been provided (but has been requested in discovery). Ruby Slipper is thus left to infer that Defendants did, in fact, possess both computers when they were misappropriating Ruby Slipper trade secrets and when the Computer Forensics Order issued, and that Defendants' failure to identify them was yet another attempted coverup.

## ARGUMENT

"It is well settled that a federal court has the inherent authority to enforce its own orders[.]" *Chisom v. Jindal,* 890 F. Supp. 2d 696, 710 (E.D. La. 2012). The Court clearly needs to exercise that authority here to ensure full compliance with the Computer Forensics Order.

The Computer Forensics Order – which, again, was entered as a result of Belou's intentional spoliation of evidence – plainly required the submission of **all** of Belou's electronic devices for forensic examination. Indeed, as part of that Order, Belou identified several devices – not including the desktop tower and laptop that Ruby Slipper now knows to be located at Fullblast Brunch – for examination, and expressly certified that he had no other devices. *See* Rec. Doc. 100, ¶1. The examination of those identified devices was thorough and time consuming, and revealed extensive misappropriation of Ruby Slipper's trade secrets and confidential information.

In light of the recent affidavits of the Fullblast Brunch employees, it is beyond debate – and unrebutted – that Defendants: failed to identify all relevant electronic devices; kept Ruby Slipper emails on at least one of the non-identified computers long after such materials should have been deleted pursuant to multiple orders of this Court; and committed these improper acts in the context of even more widespread misappropriation of Ruby Slipper's confidential recipes. Put bluntly, Defendants have repeatedly thumbed their noses at this Court's orders and have repeatedly lied to both this Court and Ruby Slipper, all in an effort to continue and cover up their ongoing misappropriation of Ruby Slipper's trade secrets and confidential information, including its recipes.

Such offensive behavior cannot be allowed to stand. As an initial step, Defendants should be ordered to do now what they should have done in the first place – produce **all** electronic devices for the same forensic examination set forth in the Computer Forensics Order.[4] That alone, however, would be insufficient to remedy Defendants' misconduct. Ruby Slipper has incurred

---

[4] These devices should be subject to forensic examination even if Defendants were to belatedly produce evidence that they were acquired after the Computer Forensics Order was entered. Castelin's affidavit indicates that Ruby Slipper emails and documents remain on, at least, the desktop computer, *see* Castelin Aff., ¶10, and Smith's affidavit recounts Belou's admission that he was supposed to delete Ruby Slipper documents but "kept them anyway." *See* Rec. Doc. 133-2, at 6, ¶18. Belou easily could have copied Ruby Slipper materials from the HP Pavilion or his email to a flash drive that he did not identify, then copied the files from that flash drive onto another, later acquired device.

substantial attorneys' fees preparing this Motion and will incur even more attorneys' fees and costs in monitoring and ensuring compliance with any supplemental computer forensics order that this Court enters, and in reviewing the results of any such supplemental examination.  It would be patently unjust for Ruby Slipper to be forced to bear these costs, when they are solely occasioned by Defendants' duplicitous conduct.  *See In re Reifler,* 2019 WL 396525, *7-9 (S.D.N.Y. Jan. 31, 2019) (ordering sanctions, including attorneys' fees and, ultimately, default judgment for party's failure to comply with computer forensics order, including failure to identify all electronic devices).

## CONCLUSION

For the reasons set forth above, Ruby Slipper respectfully requests that the Court:  (1) order Defendants to identify, by make, model, serial number, and purchase date, all electronic devices owned, leased, or used by Defendants at any time from January 1, 2018 to present, other than the specific devices already identified in the Computer Forensics Order; (2) order Defendants (not Defendants' counsel) to certify, under oath, that all such electronic devices have been identified; (3) order Defendants to submit all identified devices, including but not limited to the desktop and laptop computers referenced in the affidavits of the former Fullblast Brunch employees, to a forensic examination as set forth in the Computer Forensics Order; and (4) award Ruby Slipper its costs, including attorneys' fees, that it has incurred and will incur in connection with both this Motion and any supplemental computer forensics order issued by the Court, including but not limited to Ruby Slipper's review of the results of any such supplemental examination.

Dated: October 9, 2019

Respectfully submitted,

THE RUBY SLIPPER CAFE, LLC,
By its attorneys,

*/s/ David L. Patrón*

David L. Patrón (La. Bar #22566)
Lindsay Calhoun (La. Bar #35070)
James H. Gilbert (La. Bar #36468)
Phelps Dunbar LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130
(504) 584-9295
david.patron@phelps.com

Steven L. Manchel (*pro hac vice*)
Brian H. Lamkin (*pro hac vice*)
Manchel & Brennan, P.C.
100 River Ridge Drive, Suite 308
Norwood, MA 02062
(617) 796-8920
smanchel@manchelbrennan.com