# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RUBY SLIPPER CAFÉ, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-1548** |
| **CHRISTOPHER BELOU, ET AL.** | **SECTION: "M" (4)** |

## ORDER

Before the Court is a **Motion to Compel (R. Doc. 179)** filed by the Plaintiff Ruby Slipper Café, LLC ("Ruby Slipper") seeking an order overruling Defendants' Christopher Belou ("Belou") and CB Hospitality, LLC ("CBH") objections to Interrogatory No. 19 and Request for Production No. 87, which seek Defendants identify the individuals most likely to shed light on issues surrounding Defendants' continued use, control, and possession of Ruby Slipper information . The motion is opposed. R. Doc. 182. The Court held oral argument on this motion on December 18, 2019. R. Doc. 187.

## I.     Background

On February 14, 2018, Ruby Slipper filed its complaint against Christopher Belou, its former restaurant consultant and temporary general manager, head of its business development, and member of its Executive Leadership Team. R. Doc. 1. Ruby Slipper claims Belou breached its trust by: (1) advising Ruby Slipper to terminate its lease ("Lease") at the original location at 139 South Cortez Street in New Orleans, Louisiana ("Cortez Street location") early; (2) entering into a lease with Ruby Slipper's former landlord, Sugarland Holdings, Inc. ("Sugarland"), at that location, allegedly using Ruby Slipper's former business model of all day breakfast menu through surreptitiously taking its trade secrets and confidential information; and (3) using its business model for his benefit and the benefit of CBH, Belou's newly-formed corporation, and Fullblast Brunch, Belou's newly-opened restaurant. *See id.*

Ruby Slipper also alleges that Belou entered into a confidential agreement that it has recently discovered is missing from its files. The agreement provided that if Belou breached the terms of the confidentiality agreement he could be subject to claims for breach of contract, detrimental reliance, misappropriation of trade secrets, breach of fiduciary duty, unfair trade practices, and unfair competition.

Plaintiff alleges, in the latter half of 2017, Ruby Slipper's Executive Leadership Team, which included Belou, discussed various options for operating the Cortez Street location and the soon-to-open Broad Street location simultaneously. Nevertheless, Belou persuaded the team to close the Cortez Street location at the end of 2017. R. Doc. 143, p. 3. As a result, Ruby Slipper negotiated the early termination of the lease. Ruby Slipper maintains Belou improperly influenced the Executive Leadership Team to benefit himself as he was in secret negotiations with Sugarland to take over that location and open his own competing breakfast all-day/ brunch restaurant—Fullblast Brunch. *Id.* Ruby Slipper claims it would have never agreed to terminate the Lease early had Belou disclosed his conflict of interest. *Id.*

Belou refutes Ruby Slipper's rendition of the facts and alleges that Ruby Slipper had its own independent motivations for terminating the lease early. R. Doc. 130-1, p. 4. Belou claims that at some point prior to November 1, 2017, Ruby Slipper engaged in active negotiations to sell a major equity interest of the Ruby Slipper business to a private equity firm, Bregal Investments Inc ("Bregal Partners"). *Id.* Nonetheless, since the Lease contained a provision providing Sugarland with the Right of First Refusal to buy the Ruby Slipper business, continuation of the Lease, with this right vested to Sugarland, threatened to derail the impending sale to Bregal Partner, the equity firm. *Id.* As such, it is Belou's position that disclosing his plans to open a competing

restaurant in the Cortez Street location would have had no bearing on Ruby Slipper's ultimate decision to terminate the Lease early. *Id.*

After Plaintiff instituted this case, on March 5, 2018, the District Judge entered parties' Consent Temporary Injunction Order enjoining Defendants Belou and CBH, *inter alia*, from "possessing and using confidential, proprietary information and trade secrets belonging to the Ruby Slipper." R. Doc. 11, p. 1. Thereafter, on April 3, 2018, the District Judge entered parties' Consent Preliminary Injunction Order enjoining and restraining Defendants Belou and CBH from directly or indirectly disclosing or making any use of any trade secrets or confidential information of Ruby Slipper pending final resolution of this action. R. Doc. 50, p. 2.

On March 22, 2018, Belou admitted to deleting multiple emails, ultimately produced by Sugarland, after receiving a demand letter from Ruby Slipper. R. Doc. 179-3. Belou also testified he deleted the emails because he did not want to drag Sugarland into the lawsuit. *Id.* As such, on March 29, 2018, Plaintiff Ruby Slipper moved for sanctions for spoliation of evidence. R. Doc. 32.

In Ruby Slipper's motion for sanctions, it sought an order permitting Ruby Slipper to physically seize and forensically examine Defendants' personal computers (including any desktop computers, laptop computers, tablets, or smart phones) for any additional spoliated evidence. *Id.* At a subsequent status conference, on July 16, 2018, the Court denied the Plaintiff's motion for sanctions for spoliation of evidence without prejudice, but ordered the parties meet and develop and Electronically Stored information ("ESI") protocol to govern the search of Mr. Belou's personal electronic devices. R. Doc. 90. The Court further provided that Plaintiff may reurge its

motion for sanctions for spoliation, if necessary, following the completion of the ESI protocol and the resultant discovery. *Id.*[1]

Ruby Slipper contends that Defendant Christopher Belou hired Daniel Andrews to assist Belou in removing Ruby Slipper documents from the computer, but, due in large part to Andrews' lack of qualifications, Andrews actually uploaded a massive quantity of Ruby Slipper documents to Belou's computer. R. Doc. 106-1, p. 15. Specifically, Ruby Slipper contends that despite Belou never accessing his Gmail email account from the computer in question, Andrews installed the Thunderbird desktop application to collect, review, and sync Belou's Gmail, which ultimately stored the account information and downloaded emails of the Computer's local hard drive. *Id.*

Pursuant to the Court's ESI Protocol order, a consultant performed forensic analysis of Belou's HP Pavilion desktop computer, which revealed the continued existence of the Thunderbird profile and all associated emails on Belou's desktop computer. R. Doc. 106-1, p. 17. After this discovery, the consultants, at the parties' direction, permanently removed all of the Ruby Slipper emails from the HP Pavilion desktop. R. Doc. 179-1, p. 3.

Most recently, Plaintiff received signed affidavits from numerous former Fullblast Brunch employees of Defendants Belou and CBH, attesting to the fact, Defendants kept numerous Ruby Slipper recipes hidden at their new restaurant, Fullblast Brunch, and used them to prepare food and drink items for sale to their customers. R. Doc. 179, p. 1. Plaintiff also contend Defendants' use of the alleged trade secrets is contrary to Defendants' representations and the Temporary Restraining Order and Preliminary Injunction requiring Defendants to return, delete, and not use all Ruby Slipper information in their possession, custody, or control. *Id.*

---

[1] The Court notes that, since that time, Plaintiff has not reurged its motion for sanctions for spoliation of evidence.

Specifically, the affidavits attested to four former Fullblast Brunch employees having personal knowledge that Belou: (1) kept a folder of Ruby Slipper recipes in a plastic storage container under his desk at Fullblast Brunch; (2) kept additional Ruby Slipper recipes hidden between the pages of cookbooks; (3) served food and drinks at Fullblast Brunch that were made using Ruby Slipper recipes; and (4) required his head chef to come in before any of the other employees in order to prepare dishes with the Ruby Slipper recipes in secret. R. Doc. 179-1, p. 4; *see also* R. Docs. 179-4, 179-5, 179-6, 179-7, Affidavits of Michelle Castelin, Michael Smith, Bryan Weatherman, and Ashley Weatherman.

Based on Defendants' four former employees' affidavits, Plaintiff's filed an *Ex Parte* Motion for Seizure of Trade Secret Information. R. Doc. 133. This motion provided that Defendants continue to retain and use both digital and hard copies of numerous Ruby Slipper trade secrets, including recipes and financial information. *Id.* On September 30, 2019, the District Judge found that Plaintiff Ruby Slipper had established the requisite grounds for a civil seizure pursuant to the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, and accordingly, executed the seizure of copies of its recipes and the electronic data through the copying of two computers at Defendants' restaurant, Fullblast Brunch, at the Cortez Street Location. R. Doc. 134.

As part of the seizure's good cause finding, the District Judge noted the record of the case and the evidence presented in connection with Plaintiff's motion establishes a *prima facie* case of Defendant's disregard and willingness to destroy or hide relevant evidence. R. Doc. 134, p. 4. The District Judge limited the seizure to recipes or documents bearing identifying markings of Ruby Slipper, including the Ruby Slipper logo, signature red and yellow color scheme, or "TRS", "RS" or "Ruby Slipper" notation. R. Doc. 134, p. 5. The seizure was carried out by the U.S. Marshal on September 30, 2019, but there was no seizure of any items. R. Doc. 137.

On October 9, 2019, Plaintiff moved to amend the scheduling order and continue trial due to Defendants' continued retention and use of both digital and hard copies of numerous Ruby Slipper trade secrets, including recipes and financial information. R. Doc. 147, p. 1. In that motion, Plaintiff set forth recent revelations—to include sworn testimony that indicated that Belou did not disclose all computers in his possession in connection with the Court-ordered forensic examination of his electronic devices following his intentional deletion of relevant evidence—which require Ruby Slipper to conduct substantial additional discovery not able to be completed by the former schedule. R. Doc. 147-1, p. 1. On October 21, 2019, the District Judge found good cause existed to continue the trial. R. Doc. 166. The District Judge also ordered new deadlines will be set for filing witness and exhibit lists, the discovery cutoff, and filing pretrial motions. *Id.*

As a result of this extension, Plaintiff Ruby Slipper propounded additional discovery on Defendants. R. Doc. 179-1, p. 6. These requests seek the identity of persons who have been employed at Fullblast brunch and documents so identifying such individuals. *Id.* Plaintiff further contend that this information is relevant based on the claims and evidence which all tend to suggest Defendant, notwithstanding multiple Court orders, continues to use and appropriate Ruby Slipper confidential, proprietary, and trade secret information. Defendants maintain Plaintiff's support for its allegations—affidavits from four disgruntled ex-employees—is weak and the scope of the requests are overbroad. This is the sole issue for the Court's examination.

## II.  **Standard of Review**

Discovery of documents, electronically stored information, and things is governed by Federal Rule of Civil Procedure ("Rule") 34. Rule 34 allows a party to request the production of "any designated documents or electronically stored information" or "any tangible things." *Id.* Similarly, Rule 33 allows a party to serve another party written interrogatories which "must, to the

extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Both Rule 33 and 34 allow a party to ask interrogatories and request production to the extent of Rule 26(b). Fed. R. Civ. P. 33(a)(2); 34(a).

Rule 26(b)(1) provides that parties may obtain discovery regarding relevant information to any claim or defense as long as it is nonprivileged. Fed. R. Civ. P. 26. Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." *Id*. Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

### III. Analysis

Plaintiff's Interrogatory No. 19 requests the Defendants "[i]dentify (including full name, address, and all known phone numbers and email addresses) all Persons who are or ever have been employed at the New Restaurant and, for each such Person, state each of his or her positions, the dates each such position was held and, if the Person is no longer employed at the New Restaurant, all reason(s) why such Person is no longer employed." R. Doc. 179-8, p. 19. Plaintiff's request for Production No. 87 seeks "[d]ocuments sufficient to Identify all Persons who are or ever have been employed at the New Restaurant and their dates and positions of employment." R. Doc. 179-8, p. 4.

Plaintiff maintains, despite Defendants' allegations that there is no continued use of Ruby Slipper's confidential and proprietary information, that already four former Fullblast Brunch employees have come forward to provide affidavits that Defendants continue to use Ruby Slipper

trade secrets at their restaurant in violation of the Court's orders. R. Doc. 179-1, p. 7. Ruby Slipper contends the testimony from the four former employees places the inner, behind-the-scenes workings and happenings of Belou's restaurant squarely at issue in this case. *Id.* Ruby Slipper further contends, as to the breadth and scope of the request, that it is in no position to gauge which employees might have the most relevant information until it learns the position and dates of employment of all Defendants' current and former employees. R. Doc. 179-1, p. 7.

Defendants, in opposition, represent that it would more fully respond to Ruby Slipper's request if Ruby Slipper would be willing to limit the scope of the request to persons who may have relevant information relating to Ruby Slipper's trade secret claims, e.g., employees or cooks who were charged with executing the recipes of Defendant's restaurants. R. Doc. 182, p. 1. Defendants further contend Ruby Slipper's refusal to narrow their request demonstrates that Ruby Slipper does not know exactly what it is looking for and these requests are no more than a fishing expedition. *Id.* Defendants finally contend that the Court's analysis of Request for Production No. 5 in *Scioneaux v. Elevating Boats, LLC*, No. CIV.A. 10-0133, 2010 WL 4366417, at *4 (E.D. La. Oct. 20, 2010) is particularly instructive.

The Court, as an initial matter, notes that the four former Fullblast Brunch employees who came forward to give testimony in this case bore the following titles: (1) Michelle Castelin—server and bartender, (2) Michael Smith—prep cook and kitchen manager, (3) Bryan Weatherman—cook, and (4) Ashley Weatherman—server. The Court also notes many of these employees, with exception of Bryan Weatherman,[2] are also former Ruby Slipper employees. Based on the widely varying positions of the former Fullblast employees who have thus far come forward, the Court

---

[2] The Court here notes despite Bryan not having a direct connection to Ruby Slipper, that his wife, Ashley Weatherman is a former Ruby Slipper employee; so, he would have some knowledge of Ruby Slipper's information, color scheme, recipes, etc.

hesitates to limit Plaintiff's requests to those employees or cooks who were charged with executing the recipes of Defendant's restaurants. Instead these affidavits suggest, if anything, that Fullblast Brunch employees, with some previous connection to Ruby Slipper, are in the best position to identify and have some potential knowledge as to Defendants continued use of Plaintiffs' alleged trade secrets.[3]

Nonetheless, the Court is reluctant to allow a fishing expedition by requiring a listing of every employee that has ever walked through the doors of the Defendants' restaurant. This, especially so, when the only evidence supporting Plaintiff's claim that Defendants are in possession of and still using the trade secrets are affidavits, which are not only inherently untested, but drafted by lawyers. Unlike sworn testimony, affidavits do not allow Defendants to assess the credibility of the witness, understand the witness's background, and probe into the witness's motivations for signing such document.

Without more, the evidence to support Plaintiff's claim does not give the Plaintiff the right to *carte blanche* to go, every time Defendants accept an application and hire an individual, and question that individual. *See Scioneaux v. Elevating Boats*, LLC, No. CIV.A. 10-0133, 2010 WL 4366417, at *4 (E.D. La. Oct. 20, 2010) (request seeking contact information of all employees over a ten-year period over broad and unduly burdensome). This sort of interrogation would not only disrupt Defendants' business, but it would serve to intimidate Defendants' employees who, quite frankly, do not have a dog in the fight. As such, while the four former employees may have provided affidavits that place the inner workings of Defendants' restaurant at issue, the Court finds the identification of <u>all</u> persons who are or ever have been employed by Defendants' overbroad and not relevant.

---

[3] The Court, here, also notes that more than 100 trade secrets have thus far been identified. R. Doc. 130-1, p. 1.

Notwithstanding, in this case, a case brought under trade secret appropriation law, that former Fullblast Brunch employees have already attested to Defendants Belou's and CBH's continued use of Ruby Slipper recipes and information in violation of the Court's Preliminary Injunction Order, places the potential knowledge of some of Fullblast Brunch employees at issue. *See id.* (allowing Plaintiff to modify request in an attempt to sufficient narrow the request to relevant information). As such, the Court finds some of the information sought is relevant.

Accordingly, the Court, in an attempt to narrow the request, determined should the four former employees identify individuals, who worked at Defendants' restaurant at the same time as them, and corroborate that these individuals have knowledge of Defendants' alleged continued possession and use of Plaintiff's purported trade secrets, that those individual's identification information and position is relevant.

Since the hearing, on December 31, 2019, Plaintiff's counsel has identified the following individuals as possible co-workers who have knowledge of Defendants' alleged continued use and possession of Plaintiff's purported trade secrets:

- Jonathan (BELOU-001636)
- Ethan Gardam (BELOU-001630)
- Cody (BELOU-001640)
- Ken (BELOU-001645)
- Renee (BELOU-001653)
- Ken Leach (BELOU 001654)
- Charles Depre (BELOU-001662)
- Aubrey (BELOU-001687)
- Corey Murray (BELOU-001718)
- Cedrick (cook)
- Charles (different cook from Charles Depre)
- Kim (dishwasher)
- Mr. Al (cook)

The Court finds this modification and direct identification of co-workers sufficiently narrows the requests to those persons with relevant information. Accordingly, the Court grants

Plaintiff's motion to compel seeking the full name, physical address, and all known phone numbers and email addresses of these thirteen specifically identified individuals.

IV. <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion to Compel (R. Doc. 179)** is **GRANTED AS MODIFIED**.

New Orleans, Louisiana, this 29<u>th</u> day of January 2020.

**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**