# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THE RUBY SLIPPER CAFÉ, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-1548** |
| **CHRISTOPHER BELOU, ET AL.** | **SECTION: "M" (4)** |

## ORDER

Before the Court is Plaintiff The Ruby Slipper Café, LLC ("Ruby Slipper")'s **Motion for Supplemental Forensic Examination Pursuant to the Court's Order on Protocol for Computer Forensic Examination (R. Doc. 150)** seeking an order compelling Defendants Christopher Belou ("Belou") and CB Hospitality, LLC ("CBH") to produce two previously undisclosed computers for forensic examination. This motion is opposed. R. Doc. 159. This motion was heard on the briefs on October 24, 2019 and referred to the undersigned United States Magistrate Judge on February 5, 2020. *See* R. Doc. 193.

### I. Background

On February 14, 2018, Ruby Slipper filed its complaint against Christopher Belou, its former restaurant consultant and general manager, head of business development, and member of its Executive Leadership Team. R. Doc. 1. Ruby Slipper claims Belou breached its trust by: (1) advising Ruby Slipper to terminate its lease ("Lease") at the original location at 139 South Cortez Street in New Orleans, Louisiana ("Cortez Street location") early; (2) entering into a lease with Ruby Slipper's former landlord, Sugarland Holdings, Inc. ("Sugarland"), at that location, allegedly using Ruby Slipper's former business model of all day breakfast menu through surreptitiously taking its trade secrets and confidential information; and (3) using its business model for his benefit and the benefit of CBH, Belou's newly-formed corporation, and Fullblast Brunch, Belou's newly-opened restaurant. *See id.*

Ruby Slipper also alleges that Belou entered into a confidential agreement that it has recently discovered is missing from its files. The agreement provided that if Belou breached the terms of the confidentiality agreement he could be subject to claims for breach of contract, detrimental reliance, misappropriation of trade secrets, breach of fiduciary duty, unfair trade practices, and unfair competition.

Plaintiff alleges, in the latter half of 2017, Ruby Slipper's Executive Leadership Team, which included Belou, discussed various options for operating the Cortez Street location and the soon-to-open Broad Street location simultaneously. Nevertheless, Belou persuaded the team to close the Cortez Street location at the end of 2017. R. Doc. 143, p. 3. As a result, Ruby Slipper negotiated the early termination of the lease. Ruby Slipper maintains Belou improperly influenced the Executive Leadership Team to benefit himself as he was in secret negotiations with Sugarland to take over that location and open his own competing breakfast all-day/ brunch restaurant—Fullblast Brunch. *Id.* Ruby Slipper claims it would have never agreed to terminate the Lease early had Belou disclosed his conflict of interest. *Id.*

Belou refutes Ruby Slipper's rendition of the facts and alleges that Ruby Slipper had its own independent motivations for terminating the lease early. R. Doc. 130-1, p. 4. Belou claims that at some point prior to November 1, 2017, Ruby Slipper engaged in active negotiations to sell a major equity interest of the Ruby Slipper business to a private equity firm, Bregal Investments Inc ("Bregal Partners"). *Id.* Nonetheless, since the Lease contained a provision providing Sugarland with the Right of First Refusal to buy the Ruby Slipper business, continuation of the Lease, with this right vested to Sugarland, threatened to derail the impending sale to Bregal Partner, the equity firm. *Id.* As such, it is Belou's position that disclosing his plans to open a competing

restaurant in the Cortez Street location would have had no bearing on Ruby Slipper's ultimate decision to terminate the Lease early. *Id.*

After Plaintiff instituted this case, on March 5, 2018, the District Judge entered parties' Consent Temporary Injunction Order enjoining Defendants Belou and CBH, *inter alia*, from "possessing and using confidential, proprietary information and trade secrets belonging to the Ruby Slipper." R. Doc. 11, p. 1. Thereafter, on April 3, 2018, the District Judge entered parties' Consent Preliminary Injunction Order enjoining and restraining Defendants Belou and CBH from directly or indirectly disclosing or making any use of any trade secrets or confidential information of Ruby Slipper pending final resolution of this action. R. Doc. 50, p. 2.

On March 22, 2018, Belou admitted to deleting multiple emails, ultimately produced by Sugarland, after receiving a demand letter from Ruby Slipper. R. Doc. 179-3. Belou also testified he deleted the emails because he did not want to drag Sugarland into the lawsuit. *Id.* As such, on March 29, 2018, Plaintiff Ruby Slipper moved for sanctions for spoliation of evidence. R. Doc. 32.

In Ruby Slipper's motion for sanctions, it sought an order permitting Ruby Slipper to physically seize and forensically examine Defendants' personal computers (including any desktop computers, laptop computers, tablets, or smart phones) for any additional spoliated evidence. *Id.* At a subsequent status conference, on July 16, 2018, the Court denied the Plaintiff's motion for sanctions for spoliation of evidence without prejudice, but ordered the parties meet and develop and Electronically Stored information ("ESI") protocol to govern the search of Mr. Belou's personal electronic devices. R. Doc. 90. The Court further provided that Plaintiff may reurge its

motion for sanctions for spoliation, if necessary, following the completion of the ESI protocol and the resultant discovery. *Id.*[1]

Ruby Slipper contends that Defendant Christopher Belou hired Daniel Andrews to assist Belou in removing Ruby Slipper documents from the computer, but, due in large part to Andrews' lack of qualifications, Andrews actually uploaded a massive quantity of Ruby Slipper documents to Belou's Hewlett-Packard Pavilion All-in-one, Model 24-b214 desktop computer ("HP Pavilion"). R. Doc. 106-1, p. 15. Specifically, Ruby Slipper contends that despite Belou never accessing his Gmail email account from the computer in question, Andrews installed the Thunderbird desktop application to collect, review, and sync Belou's Gmail, which ultimately stored the account information and downloaded emails onto the Hewlett-Packard's local hard drive. *Id.*

Pursuant to the Court's ESI Protocol Order, a consultant performed forensic analysis of Belou's HP Pavilion desktop computer, which revealed the continued existence of the Thunderbird profile and all associated emails on Belou's desktop computer. R. Doc. 106-1, p. 17. After this discovery, the consultants, at the parties' direction, permanently removed all of the Ruby Slipper emails from the HP Pavilion desktop. R. Doc. 179-1, p. 3.

More recently, Plaintiff received signed affidavits from numerous former Fullblast Brunch employees of Defendants Belou and CBH, attesting to the fact, Defendants kept numerous Ruby Slipper recipes hidden at their new restaurant, Fullblast Brunch, and used them to prepare food and drink items for sale to their customers. R. Doc. 179, p. 1. Plaintiff also contends Defendants' use of the alleged trade secrets is contrary to Defendants' representations and the Temporary

---

[1] The Court notes that, since that time, Plaintiff has not reurged its motion for sanctions for spoliation of evidence.

Restraining Order and Preliminary Injunction requiring Defendants to return, delete, and not use all Ruby Slipper information in their possession, custody, or control. *Id.*

According to the Plaintiff, these same four former employees provided eyewitness testimony that Defendant Belou, in addition to the HP Pavilion desktop, kept two other computers at Fullblast Brunch—a laptop and a desktop. R. Doc. 150-1, p. 2. Plaintiff contends Defendants failure to identify and produce these computers for forensic examination violates the Court's previous Order on Protocol for Computer Forensic Examination (R. Doc. 100). *Id.* Ruby Slipper further contends that not only did Defendants possess these two computers at the time the Court issued the Computer Forensic Examination Order on September 7, 2018, but the Defendants actively concealed these devices from the Court in order to avoid subjecting them to forensic examination. *Id.* As such, Plaintiff now seeks the Court order Defendants to identify all electronics that they have ever owned or used since January 1, 2018, and to submit these devices to the same forensic examination pursuant to the protocol set forth in the Court's September 7, 2018 Order (R. Doc. 100) at Defendants' expense. *Id.*

Defendants oppose any additional computer forensic examinations where the computers described either do not exist or were not subject to the Order on Protocol for Computer Forensic Examination (R. Doc. 100). R. Doc. 159, p. 1-2. Defendants also explain that the only other device at Full Blast Brunch, beyond the HP Pavilion desktop already identified and forensically examined, is a Panasonic CF-T8 laptop ("Panasonic") that was lent to Belou, by a neighbor, who set up the speaker system. R. Doc. 159, p. 5. Belou further contends not only is he not the owner of the Panasonic laptop, but Defendants contend that this laptop was never used for conducting business or exchanging emails but rather only for streaming music in the restaurant. R. Doc. 159, p. 3, 5.

As such, Defendants contend that Ruby Slipper has not shown good cause for the forensic examination of any additional devices and its motion should be denied. R. Doc. 159, p. 7-9.

## II. Standard of Review

Discovery of documents, electronically stored information, and things is governed by Federal Rule of Civil Procedure ("Rule") 34. Rule 34 allows a party to request the production of "any designated documents or electronically stored information" or "any tangible things." *Id.* Rule 34 allows a party to ask interrogatories and request production to the extent of Rule 26(b). Fed. R. Civ. P. 34(a).

Rule 26(b)(1) provides that parties may obtain discovery regarding relevant information to any claim or defense as long as it is nonprivileged. Fed. R. Civ. P. 26. Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." *Id.* Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

## III. Analysis

Plaintiff contends that the forensic examination of these two unidentified computers would likely reveal extensive misappropriation of Ruby Slipper's trade secrets and confidential information, including its recipes. R. Doc. 150-1, p. 8. Plaintiff also contends that the Defendants have not acted with honesty and candor to the Court in failing to disclose and submit these electronic devices for forensic examination. *Id.* Plaintiff finally suggests that the forensic examination of all devices is an insufficient remedy for Defendants wrongs and Defendants should

be forced to bear the cost of this forensic examination and Plaintiff's continued monitoring to ensure future compliance with the Court's orders. R. Doc. 150-1, p. 8-9.

Defendants contend the testimony of the four former Full Blast Brunch employees is unreliable and has already, on occasion, been discredited.[2] R. Doc. 159, p. 3. Defendants also contend that the only computer subject to the Order on computer forensic examination is the HP Pavilion. R. Doc. 159, p. 2. Belou also explains that the Panasonic laptop was borrowed from his sound system supplier and has been used exclusively to stream music in his restaurant and further suggests that the other purported undisclosed computer is perhaps the result of a mistaken identification of his TV128DC5 Circuit Box underneath his desk as a desktop base. *See* R. Doc. 159-1 and appended photographs. As such, Defendants contend that there is no good cause that would justify the costly and significant burden of undergoing a second extensive forensic examination. R. Doc. 159, p. 8.

"As recognized by the Advisory Committee, Rule 34(a) 'is not meant to create a routine right of direct access to a party's electronic information system,' as '[i]nspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy.'" *Brand Servs., LLC v. Irex Corp.*, Civ. A. No. 15-5712, 2017 WL 67517, at *3 (Roby, M. J.) (E.D. La. Jan. 6, 2017) (citing Fed. R. Civ. P.

---

[2] The affidavits attested to four former Fullblast Brunch employees having personal knowledge that Belou: (1) kept a folder of Ruby Slipper recipes in a plastic storage container under his desk at Fullblast Brunch; (2) kept additional Ruby Slipper recipes hidden between the pages of cookbooks; (3) served food and drinks at Fullblast Brunch that were made using Ruby Slipper recipes; and (4) required his head chef to come in before any of the other employees in order to prepare dishes with the Ruby Slipper recipes in secret. R. Doc. 179-1, p. 4; *see also* R. Docs. 179-4, 179-5, 179-6, 179-7, Affidavits of Michelle Castelin, Michael Smith, Bryan Weatherman, and Ashley Weatherman. Based on these affidavits, Plaintiff's filed an *Ex Parte* Motion for Seizure of Trade Secret Information. R. Doc. 133. This motion provided that Defendants continue to retain and use both digital and hard copies of numerous Ruby Slipper trade secrets, including recipes and financial information. *Id.* On September 30, 2019, the District Judge found that Plaintiff Ruby Slipper had established the requisite grounds for a civil seizure pursuant to the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836. The seizure was carried out by the U.S. Marshal on that same day, but there was no seizure of any items. R. Doc. 137.

34, Notes of Advisory Committee on 2006 Amendments). Thus, "[c]ourts should guard against undue intrusiveness resulting from inspecting or testing such systems." *Id.*

Courts in the Eastern District have clarified "[a] mere desire to check that the opposition has been forthright in its discovery responses is not a good enough reason for a court order compelling an exhaustive computer forensic examination." *NOLA Spice Designs, LLC v. Haydel Enterprises, Inc.*, Civ. A. No. 12-2515, 2013 WL 3974535, at *2 (E.D. La. Aug. 2, 2013) (quotations omitted). In addition, "mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures." *Id.* As such, "compelled forensic imaging is not appropriate in all cases, and courts must consider the significant interests implicated by forensic imaging before ordering such procedures, including that they must account properly for the significant privacy and confidentiality concerns." *Id.* at *3 (quotations omitted). Here, Plaintiff Ruby Slipper fails to provide the Court good enough reason to compel additional computer examination.

First, the Court does not find that Defendants have violated the Order on Protocol for Computer Forensic Examination. The parties jointly submitted, and the Court subsequently adopted, a protocol for the forensic examination of Belou's personal devices. R. Doc. 100. The personal devices to be examined were limited by Belou's July 15, 2018 discovery response to Plaintiff's Second of Interrogatories. *Id.* Plaintiff's Interrogatory No. 9 sought the identification of "all desktop computers, laptop computers, tablets, smartphones, and external storage devices <u>owned</u> or <u>leased</u> by" Belou. R. Doc. 150-4, p. 7 (emphasis added). In response, Belou identified his HP Pavilion desktop, his Apple iPhone 5, and two external flash drives. *Id.*

Belou did not identify the Panasonic laptop in response to the Plaintiff's interrogatory or the jointly submitted Order on Protocol for Computer Forensic Examination (R. Doc. 100) because

8

the laptop is not Belou's personal devices as he neither owns it or leases it—Brady Lester, Belou's neighbor and a nonparty to this action, does. *See* R. Doc. 198-1, Affidavit of Brady Lester. On June 3, 2018, after Belou's and Ruby Slipper's relationship ended, Belou's neighbor Lester lent his laptop to Belou as part of Lester installing a sound system in Full Blast Brunch. *See id.* As such, the Court fails to see how Belou acted deceptively in not identifying a laptop to Plaintiff that he neither owns nor leases.[3]

Second, the Court finds that Plaintiff Ruby Slipper has not established that forensic examination would likely produce any relevant information in the case at hand. The Court remains reluctant to compel a costly supplemental examination when the testimony of the former employees that has largely been discredited after the U.S. Marshall raid resulted in nothing being uncovered. In addition, as this Court has previously explained, affidavits are not only inherently untested but also drafted by lawyers. *See* R. Doc. 190, p. 9 (January 15, 2020 Order on Motion to Compel). So, unlike sworn testimony, affidavits do not allow Defendants to assess the credibility of the witness, understand the witness's background, and probe into the witness's motivations for signing such document. *See id.*

Any proof Plaintiff has provided that there may be any relevant information on these devices is skeptical at best. Such intrusive examination, in the Court's opinion, is more indicative of a fishing expedition. Applying the foregoing standards and principles of proportionality, the Court does not find Plaintiff Ruby Slipper has sufficiently established good cause exists for the supplemental computer forensic examinations and further finds the request is not proportional to the needs of the case. As such, the Court declines to compel forensic examination of the Panasonic laptop and other purported undisclosed desktop at this time.

---

[3] The Court, here, also reminds Plaintiff that the Court did not make any definitive finding that Belou spoliated evidence despite his deposition testimony that he deleted some emails. *See* R. Doc. 90.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion for Supplemental Forensic Examination Pursuant to the Court's Order on Protocol for Computer Forensic Examination (R. Doc. 150)** is **DENIED.**

New Orleans, Louisiana, this 3rd day of April 2020.

**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**